UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAR 1 5 2017

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

GERALD LEE FARRELL
FCI Big Spring
1900 Simler Ave.
Big Spring, TX 79720
Reg# 16010-023

VS.

REX TILLERSON -
SECRETARY OF STATE
1350 Pennsylvania Ave. NW
Washington, D.C. 20004

CORRIN FERBER -
DIRECTOR OFFICE OF LEGAL
AFFAIRS, BUREAU OF
CONSULAR AFFAIRS
600 19th. Street, N.W
10th Floor
Washington, D.C. 20431

Case: 1:17-cv-00490
Assigned To : Leon, Richard J.
Assign. Date : 3/15/2017
Description: Admin. Agency Review

-----------------------------------

## COMPLAINT

_Gerald Lee Farrell_
Gerald Lee Farrell
March 7th, 2017

Gerald Lee Farrell
16010-023
FCI Big Spring
1900 Simler Ave
Big Spring, TX
79720

TABLE OF CITED CASES AND STATUTES

STATUTES

1. The Immigration and Nationality Act of 1952 as codified under 8 U.S.C. 1100 et seq.  Specifically, 8 U.S.C. 1481(a), (b),  1481(1),(5),(6), 1483, 1488, 1501.

2. Administrative Procedure Act as codified under 5 U.S.C. 700 et seq., specifically 702, 704 and 706(1)(2).

3. The Code of Federal Regulations, Title 22, Chapter I, 50.40, 50.50 and 50.51 specifically

4. 5. U.S.C. 553, 28 U.S.C. 2201 and 1331 et seq.

5. 28 U.S.C. 1391(e)(1)

KEY CASES CITED

1. Haines v. Kerner 404 US 519 (1972)

2. Encino Motorcars, LLC v. Hector Navarro, et. al. U.S S. Ct. 2016 US LEXIS 3924 (2016)

3. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc. 467 U.S. 837, 104 S. Ct. 2778 (1984)

4. Afroyim v. Rusk 387 U.S. 253, 258 (1967)

5. Vance v. Terrazas 494 U.S. 252, 260 (1980)

6. Richards v. Secretary of State 752 F .2d 1413, 9th Cir (1985)

7. Nishikawa v. Dulles 356 U.S.129 (1958)

8. United States v. Matheson 542 f .2d 809, 811 (2nd Cir 1976)

9. Concrete Pipe v. Pension Trust 113 S. Ct. 2264 (1993)

10. Schnitzler v. United States, 411 U.S. App D.C. 412 (D.C. Cir. 2014)

11. Russello v. United States 104 S. Ct. 296 (1983)

12. Kwok Sze v. Jeh Johnson et. al. 2016 U.S. Dist. D.C. LEXIS 38266 D.D.C. (2016)

13. Fox v. Clinton 401 U.S. App D.C. 271 (D.C. Cir 2012)

14. Motor Vehicle Mfr's Ass'n v. State Farm 103 S. Ct. 2856 (1983)

15. Marks v. Esperdy 315 F .2d 673, 676 (2nd Cir 1964) affirmed in 377 U.S. 214 (1964)

16. United States v. Yakou 428 F .3d 241(D.C. Cir (2005)

17. BIA Matter of Davis #2650 (1978)

18. BIA Matter of Duggan #2026 (1970)

19. Jolley v. INS 441 F .2d 1245 (5th Cir 1971)

20. Kingdomware Techs. Inc. v. United States 579 US 136 2016)

21. Lozada Colon v. U.S. Dep't of State 2 F .Supp 2d. 43, 45
    (D.D.C. 1998).

22. Whitehead v. Secretary of State 794 F .2d 115 3rd Cir 1986)

23. Fox v. Clinton 751 F. Supp. 2d 122 D.D.C. (2010)

24. "The Survey of the Law of Expatriation" Solicitor General
    26 op. OLC 56 2002

25. Foreign Affairs Manual - 7 FAM 1200 et. seq.

**Exhibits as attached to and referenced within this Complaint**

EXHIBITS                                                      PARAGRAPH

1.   Copy of U.S. Birth Certificate                          13

2.   Letter From Zurich Insurance establishing               13
     long relationship to Switzerland (domicile)

3.   Copy of Swiss Passport, issued 30th. Jan 2004           13

4.   Official Records from Zurich "City Hall"                13
     establishing long residence in Switzerland
     including at time of arrest in 2013

5.   Article covering Plaintiff from Swiss Magazine          17
     with family photo

6.   First letter requesting CLN to U.S. Embassy             24
     (including supporting documents)**

7.   June 22nd response from Embassy                         25

8.   July 21st Letter from "Pro Bono" counsel                29
     to U.S. Embassy in Bern

9.   August 9th response from Vice Consul in Bern            30

10.  August 19th response from plaintiff                     31

11.  September 14th response from Vice Consul                32

12.  September 14th Email from plaintiff to Vice C.          40

13.  September 19th appeal to the Bureau of Consul.          41
     Affairs in Washington, D.C.

14.  Response from Bureau on 9th of November                 42

15.  Detailed response from plaintiff and request           48
     for final agency action, December 1. 2016

16.  13th of February 2017 response and denial              49

17.  Letters from the Head of Chancery, Consul               37
     Gasser dated 3rd of August, 9th of September
     2015 verifying domicile and support for
     plaintiff's return to "the country where he
     was living almost 25 years"

** Exhibit #6 supporting documents included:  A power
of attorney, copy of U.S. Birth Certificate, notarized
copy of plaintiff's Swiss passport, Bureau of Consular
Affairs "statement of understanding concerning the
consequences and ramifications of renunciation or
relinquishment of U.S. Nationality" (signed and notarized
in the presence of a U.S. Federal Officer), Affidavit
of verifying intent to lose United States citizenship
(signed and notarized in the presence of a U.S. Federal
officer), Oath of allegiance to the Swiss Confederation

PLAINTIFF ALLEGES

## I. Introduction

1.  This action is brought "pro se" to challenge the failure of the Secretary of State and Bureau of Consular Affairs Office of Legal Affairs and its responsible officials (collectively, "defendants") to perform a mandated duty owed to plaintiff. Specifically, the plaintiff alleges that defendants decision denying his request for a Certificate of Loss of United States Nationality (CLN) was a clear violation of the Immigration and Nationality Act of 1952 (INA) and the Administrative Procedure Act (APA). Plaintiff also alleges that defendants have failed to show deference to the unambigously expressed intent of Congress, Court or Board of Immigration Appeal precedent decisions, nor the Attorney General's legal opinions, which the Secretary is required to defer to under the INA (Section 103(a). Finally, plaintiff alleges that defendants have deviated both from the Code of Federal Regulations and its own published policies governing the issuance of CLNs based on the performance of an expatriating act with the intent to reliquish U.S. nationality. Inexplicably, the Secretary's actions are manifestly contrary to well-publicized public policy which is committed to deporting all "criminal aliens". Switzerland has gone on record that they will accept their citizen back and have actively sought his return.

2. Plaintiff is grateful to the court for construing his complaint liberally under the principles of <u>Haines v. Kerner</u> <u>404 US 519</u> (1972) concerning citations and the strict adherance to pleading rules as he is a pro se litigant.

3. In 2004 the plaintiff voluntarily while personally present on Swiss soil, obtained Swiss citizenship (naturalization) on his own application, while over the age of eighteen years and performed this act with the intention of forever relinquishing his United States nationality. (INA Section 349(a)(1).

4. The plaintiff wrote on the 31st of May, 2016 to the United States Embassy in Bern, Switzerland by power of attorney to formally request a CLN supported by a copy of his Swiss Passport, affidavit of intent to relinquish his United States citizenship (utilizing form prescribed by the Secretary) and an explanation that he had not made use of his U.S. citizenship since commission of the expatriating act.  He was denied by the U.S. Embassy in Bern on the 22nd of June, 2016. Following an unsuccessful chain of correspondence with the Embassy, plaintiff appealed the denial to the Bureau of Consular Affairs/Legal Affairs Office, which in turn also denied the plaintiff's request for a CLN under INA Section 349(a)(1).

5. Plaintiff alleges that the defendant's denial of his CLN is arbitrary, capricious and want of reasoned decision-making.  He further alleges that the denial is manifestly contrary to law (INA Section 349(a)(1), the Code of Federal Regulations governing the issuance of CLNs (CFR Title 22, Chapter I, 50.40 and 50.51) and the agency's own published

Policy.  Further, the plaintiff alleges that the defendant's denial has resulted in substantial and ongoing harm to the plaintiff as it compels him to continue to associate with the United States against his wishes.

6.  Plaintiff asserts that Congress has directly spoken to the precise issues at question and as such, the Secretary must "give effect to the unambiguously expressed intent of Congress" Encino Motorcars, LLC v. Hector Navarro, et. al. U.S. S. Ct. 2016 US LEXIS 3924, quoting Chevron 104 S. Ct. 2778 (1984). Plaintiff asserts that defendant's actions do not survive "Chevron step one" as Congress's intent was clear that: 1)  Loss of United States Nationality shall result from obtaining naturalization in a foreign state, when the person voluntarily applies for it, on foreign soil, while over the age of eighteen years, with the intention of relinquishing United States Nationality. 2)  Proving commission and intent shall be done by the preponderance of the evidence.  3) The sole conditions governing loss of nationality shall be in Chapter III of the INA.  4) Loss of Nationality is effective upon the commission of the expatriating act, not its administrative determination. 5) The Secretary is required to "administer and enforce" the provisions of the INA.

7.  Plaintiff seeks declaratory and injunctive relief under 706(1) of the APA to compel defendants to issue a CLN to him in accordance with statutory law and his indisputable right to expatriation under the holdings of Savorgnan v. U.S. 338 U.S. 491 498-499 (1950) and Afroyim v. Rusk 387 U.S. 253, 258 (1967).

8. Plaintiff seeks a judicial determination of the plaintiff's loss of United States nationality on the basis of his commission of 349(a)(1) and having proven by the preponderance of the evidence both the commission of the act as defined by statute and his intent to forever relinquish his U.S. nationality, consistent with the holdings in <u>Vance v. Terrazas 494 U.S. 252, 260 (1980)</u> and INA Section 349(b).

## II. Jurisdiction

9. This Court has subject matter jurisdiction over the claims put forth in the Complaint pursuant to: (1) 28 U.S.C. Section 1331 as plaintiff's claims arise under U.S. law, including 8 U.S.C. 1101 et seq. (Immigration and Nationality Act (INA)) and (2) 5 U.S.C. 701 et seq. (Administrative Procedures Act (APA)) and 706(2). Further plaintiff asserts that he has exhausted all available legal remedies, culminating in the denial of his request for a Certificate of Loss of Nationality (CLN). This Court may find relief under 5 U.S.C. 553 and 701 et seq. (APA), 28 U.S.C. 2201 and 1331 et. seq.

## III. Venue

10. Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(e)(1), as amended, which provides for a civil action in which each of the defendants is an officer or employee of the U.S. government or any agency thereof acting in his or her official capacity or under color of legal authority, or is an agency of the United States, to be brought in any Judicial

district in which a defendant in the action resides.  In the
instant case, the Department of State and the Bureau of Consular
Affairs are headquartered within the jurisdiction of the District
Court of the District of Columbia.

11. Plaintiff further asserts that a substantive part
of the events and omissions contained in this Complaint arose
within the jurisdiction of this Court, including the final agency
action: the denial of plaintiff's request for a Certificate of
Loss of U.S. Nationality.

12. Plaintiff further asserts that in the interests
of Judicial Economy and Justice warrant jurisdiction in this
Court as the agency's actions are subject to the descretion of
the Secretary of State and the Department of State, who is
headquartered in and performs a significant portion of his
duties within the Court's jurisdiction making the venue proper.

## IV. Plaintiff

13. Plaintiff, Gerald Lee Farrell proceding pro se was
born in Santa Clara, California and moved to Switzerland in his
twenties (1994). He married a Swiss Citizen in 1996 in Zurich.
His daughter was born in 2005 in Zurich. Plaintiff's personal and
cultural identity is Swiss. He speaks fluent Swiss German and all
his friends, work history and immediate family are Swiss. In 2004,
he became a Swiss Citizen, while personally present on Swiss soil,
on his own application and while over the age of eighteen years,
with the intent to forever relinquish his U.S. nationality.

Plaintiff was extradited from Europe in 2013 on an almost 10 year old warrant, stemming from allegations made against him in 2003. He is currently resided by compulsion, in Big Spring Texas. Should the plaintiff prevail in this suit, he will be declared deportable under the law and be forever banned from re-entry into the United States. This position is consistent with U.S. public policy and law and the plaintiff is baffled by the government spending tax-payer's money to prevent this deportation.

## V. Defendants

14. Defendant Rex Tillerson is the Secretary of State of the United States and is named here in his official capacity as well as his successors. The Secretary of State is required by statute to enforce and Administer the INA and to delegate such powers and authorities to subordinate employees of the Department of State. The Secretary of State is domiciled for the purpose of this action in the District of Columbia and performs a substantial part of his duties within the jurisdiction of the Court.

15. Defendant Corrin Ferber is the Director of the Office of Legal Affairs within the Department of State, Bureau of Consular Affairs and is named here in her official capacity, as well as her successors. Corrin Ferber has been delegated by the Department of State to adjudicate claims of Loss of Nationality under the INA and for the purposes of the INA is a "Consular Officer" as defined in Section 101(a)(9). Corrine Ferber is domiciled for the purposes of this action, within the jurisdiction of this Court.

## VI. Factual Allegations and Background

16. "In 1868, Congress declared that "the right of expatriation is a natural and inherent right of all people, indespensable to the enjoyment of the rights of life, liberty, and the pursuit of happiness" ACT of July 27, 1868, ch. 249, pmbl., 15 Stat. 223, 223; see also 8 U.S.C. 1481 note (2000) (quoting Rev. Stat. 1999 (2d. ed. 1878), pt. 1. at 350 (repl. vol.)) (same). That declaration further stated that "any declaration, instruction, opinion, order, or decision of any officers of this government which denies, restricts, impairs, or questions the right of expatriation, is hereby declared inconsistent with the fundimental priciples of this government" 15 Stat. at 224. Survey of the Law of Expatriation, John Yoo Opinion of the Solicitor General 26 op. OLC 56 2002.

17. Plaintiff has a very personal and deep connection to Switzerland which has been his home for the majority of his adult life, where he married, had a child and where he finds his personal identity.  Plaintiff feels deeply loyal to Switzerland and both morally and personally identifies with the long tradition of Swiss neutrality and its culture. Conversely, plaintiff has no loyalty or desire to associate himself with the United States of America, and being compelled to do so is distressing and completely incompatable with plaintiff's personal identification as a Swiss.

18. Section 349(a)(1) of the INA states that "A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily

7

performing any of the following acts with the intention of relinquishing United States Nationality."  INA Section 349(a) expresses seven ways to lose United States Nationality, the first of which is "obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years" (INA Section 349(a)(1).  "If a citizen makes that choice and carries it out, the choice must be given effect" Richards v. Secretary of State 752 F .2d 1413, 9th Cir (1985)

19. "Under current federal law, any party claiming that a person has abandoned his citizenship must establish three elements. See 8 U.S.C. 1481(a)(b) (2000). First, the person must take one of the statutorily enumerated acts of expatriation such as, "obtaining naturalization in...a foreign state after reaching the age of eighteen". Second,  he must act "voluntarily". See also Nishikawa, 356 U.S. at 133. Third, he must act 'with the intention of relinquishing United States Nationality". Survey of the Law of Expatriation (supra) (Emphasis Added)

20. In proving the claim of loss of nationality, the party claiming the loss bears the burden to prove by the preponderance of the evidence that he both committed the exp- atriating act and that he intended to reliquish his United States Nationality. (Terrazas supra), INA Section 349(b). "The burden of showing something by the preponderance of the evidence, is the most common standard in civil law and simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor

of the party who has the burden to pursuade the [judge] of the fact's existence". <u>Concrete Pipe v. Pension Trust 113 S. Ct. 2264</u> (1993).  "Since United States citizenship is considered by most to be a prized status; it is usually the government which claims that the citizen has lost it, over the vigorous opposition of the person facing the loss". <u>United States v. Matheson, 542 F .2d 809, 811</u> (2nd Cir. 1976) also quoted in the "<u>Survey of the Law of Expatriation</u>" (supra)

21. The Secretary's policy for administratively adjudicating potentially expatriating acts pursuant to INA 349(a) paragraphs (1-3), can be found in the Code of Federal Regulations Title 22, Chapter I, 50.40 as well as in the Foreign Affairs Manual 7 FAM 1200 et. seq.  The Secretary assumes an administrative presumption regarding certain acts, namely the commission of INA Section 349(a)(1-3) in that a person committing one of these acts did not commit the act with the intent of losing their U.S. Nationality.  However, CFR 50.40 expressly states that "a person who asserts [to] a consular officer after he or she has committed a potentially expatriating act, that it was his or her intent to relinquish U.S. Citizenship [will lose] his or her citizenship." (Emphasis Added)

22. Conversely, the performance of expatriation by "<u>formal renunciation</u>" is governed by INA Section 349(a)(5), where one must expressly appear [before] a consular officer in a foreign state and [in a form prescribed by the Secretary].  Formal renunciations are defined in CFR Title 22, Chapt I, 50.50 as well as in the <u>Foreign Affairs Manaual 7 FAM 1200</u> et. seq.

23. The plaintiff has been requesting a CLN from the defendants since the 31st of May, 2016.  In a long chain of correspondence, the plaintiff has repeatedly asserted his right to have his loss of nationality acknowledged through the issuance of a CLN, yet the American Embassy in Bern and later the Bureau of Consular Affairs, Director of Legal Affairs, has continued to deny his request.  "In Afroyim v. Rusk, 387 U.S. 253 (1967) the [Supreme] Court placed the right of voluntary expatriation solidly on a Constitutional footing." (quoting Richards v. Sec'y of State, 752 F .2d 1413, 1422 (9th Cir 1985)" Schnitzler v. United States, 411 U.S. App. D.C. 412 (D.C. Cir, 2014)

24.  On May 31st, 2016 the plaintiff wrote to the U.S. Embassy in Bern, Switzerland through his power of attorney and made a formal request [to] a consular officer for the issuance of a CLN (see CFR Title 22, Chapt I, 50.40) (emphasis added) In order to establish plaintiff's claim that he had fulfilled all of the elements of INA Section 349(a)(1) as well as to satisfy the requirement to prove his intent to relinquish his U.S. Nationality by the required preponderance of the evidence standard (349(b), the plaintiff provided to the Embassy: a copy of his U.S. Birth Certificate, a notarized copy of his Swiss Passport (issued 30th Jan, 2004), an executed and notarized "Statement of Understanding Concerning the Consequences and Ramifications of Renunciation or Relinquish- ment of U.S. Nationality" (on the State Department's form), an additional Affidavit of Intent to Relinquish U.S. Citizenship, and a notorized "Oath of Allegiance to the Swiss Confederation as further proof of his abandonment of U.S. citizenship.  Each

document was signed and witnessed by a U.S. Federal Officer.

25.  On the 22nd of June 2016, the Vice Consul in Bern responded recognizing that plaintiff had acquired Swiss citizenship, but denied the request for the CLN, stating that plaintiff had obtained in 2013 a U.S. Passport and therefore since he had "made use of the privilege of his U.S. citizenship to a new passport expatriation does not apply in this case." The Consul then asserted that "U.S. citizenship must be renounced 1) in the presence of a consular officer; 2) outside of the United States; 3) in the precise form prescribed by the Secretary of State." In essence, these are the exact requirements of 349(5) which are not even remotely similar to 349(1) under which plaintiff has expatriated and this Complaint falls.  Comparing 349(1) and 349(5) of the INA:

**349(1)** "obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years."

**349(5)** "making a formal written renunciation before a diplomatic or consular officer of the United States in a foreign state, in such a form as may be prescribed by the Secretary of State."

**349(5)** expressly requires a formal renunciation [before] a diplomatic or consular officer of the United States in a foreign state AND "in such a form as prescribed by the Secretary of State"

26. Plaintiff argues that defendant's interpretation of of 349(1) does not follow the procedures required by law as expressed by Congress's plain language intent in Section 349 (1-7) of the INA which unambiguously sets forth distinct conditions under which in each of the seven circumstances, a national loses his U.S.

nationality.  Plaintiff asserts that defendant is essentially
writing Section 349(1) out of the statute, which is an abuse
of his discretion and not in accordance with law.

27.  Plaintiff asserts that Congress intentionally drafted
349(1) and 349(5) as separate and unique paragraphs. In 349(5) an
appearance [before] a consular officer is required, 349(1) has
no such requirement.  "[W]here Congress includes particular language
in one section of a statute but omits it in another section of the
same Act, it is presumed that Congress acts intentionally and
purposefully in the disparate inclusion or exclusion." Russello v.
United States 104 S. Ct. 296 (1983)  Recently, the government
argued the importance of adhering to the plain language of expat-
riating statutes insisting that 1481(6) (Section 349(6) of the INA)
"requires that a renunciant make his renunciation 'before such
an officer'" Kwok Sze v. Jeh Johnson et. al 2016 U.S. Dist.
LEXIS 38266 (D.D.C. 2016).  Plaintiff argues that defendant is
equally bound to adhere to the plain language intent as spoken
by Congress in 349(1) which has no such requirement to appear
before him, nor does it prescribe in what form the expatriation
must take place other than the elements of the statute itself.
Further, Section 356 expressly prohibits additional conditions
being required before nationality is lost under each of the seven
paragraphs in 349(a).

SECTION 1 OF THE INA EXPRESSLY DOES NOT REQUIRE A PERSONAL
APPEARANCE BEFORE A CONSULAR OFFICER NOR DOES IT CONFER AUTHORITY
TO PRESCRIBE THE FORM IN WHICH THE RENUNCIATION SHALL TAKE PLACE

28.   The D.C. Circuit has already spoken to this issue in another case involving a former U.S. citizen's request for a CLN years after he had committed the expatriating act (349(1)) who like plaintiff, was requested to come before the consular officer in person, before the consulate would process his request.   The record is clear that the plaintiff in that case refused to appear and never did appear:   "(I)t is immaterial here whether Appellant could receive a CLN under section 5. There is nothing in the INA to suggest that an individual who might be entitled to a CLN under one provision cannot be entitled under another.   The fact that Appellant could have received, or still could receive, a CLN under Section 5, cannot, without more, justify the Department's denial of Appellant's request for a CLN under Section 1." Fox v. Clinton 401 U.S. App D.C. 271 (D.C. Cir 2012)

29.   Plaintiff was then assisted by counsel "pro bono" to correspond with defendants, who replied on the 21st of July, 2016 to the Honorable Ambassador Levine and explained that the alleged 2013 passport was a "passport of direct return" as defined in CFR Title 22, Chapt I, 51.20 and was requested by the U.S. Marshall Service without the knowledge, consent or desire of the plaintiff.   This passport was of limited duration and was used for the sole purpose of extraditing the plaintiff from Europe to the U.S. to face criminal charges levied against him stemming from allegations made in 2003.   Plaintiff alleges that defendant's denial on the basis of the alleged 2013 passport of direct return "runs counter to the evidence before the agency" and has not "articulate(d) a satisfactory explanation for its action including

a rational connection between the facts found and the choice made"
Motor Vehicle Mfr's Ass'n v. State Farm 103 S. Ct. 2856 (1983) as
it is clear that the alleged 2013 passport, issued at the request
of the government and not the plaintiff, should not have a color-
able influence in determining his intent to relinquish his U.S.
Nationality.  Plaintiff asserts that the burden lies on the
Government to prove the origin of the 2013 passport as they have
cited it as a reason for denying plaintiff's request for a CLN
and used it to question his intent.

30.  On the 9th of August, 2016 the Vice Consul in Bern
Mathew A. Boullioun replied and enclosed information regarding how
a citizen expatriates, solely reciting the requirements under
349(5) of the INA and requesting that plaintiff bring "$2'350--
(dollar bills printed before 2006 are not accepted) for administ-
rative processing of 'formal expatriation'."

31.  Plaintiff's counsel answered the defendant on the 19th
of August, 2016 explaining again that plaintiff **already** performed
all of the requirements of INA Section 349(1) and had proven his
intent to forever relinquish his United States Nationality, by
the required preponderance of the evidence through the supplied
affidavit and fair inference of his post expatriation conduct
following his 2004 expatriating act.  "(I)ntent to relinquish
citizenship...[can be] expressed in words or....found as a fair
inference from proved conduct" Vance v. Terrazas 444 U.S. 252
(1980)  The D.C. Circuit has also spoken to the issue of the
Department's requirement for "objective and independant evidence"
in proving expatriating acts and their intent: "in most situations

the Department's requirement for objective evidence should be easy to satisfy.  In a future case, if the Department applies the requirement in a burdensome or otherwise unfair way, that application would be subject to judicial review under the arbitrary and capricious standard." Fox v. Clinton (supra)

32.  On the 14th of September, 2016 Vice Consul Boullioun after consulting with the attorneys in the Bureau of Consular Affairs at the Department of State, again denied plaintiff's request for a CLN on the basis to do so, is prohibited by INA Section 351(a).  Plaintiff asserts that defendant has made this conclusionary statement absent any authority to support his position.  Plaintiff also asserts that defendant's conclusion is contrary to the statute, long held Court holdings as well as Board of Immigration Appeals (BIA) precedent decisions and the Attorney General's opinion, to whom the defendant must by statute defer (INA Section 103(a)).

33.  In each of the INA Sections under Chapter III "Loss of Nationality", Congress has unambiguously linked "Loss of Nationality" with the "Performance" of the expatriating act. INA Section 349(a) states "A person who is a national of the United States whether by birth or naturalization, shall "lose his nationality" by voluntarily "performing" any of the follow-ing acts" (emphasis added).

INA Section 356 states "The "loss of nationality" shall result solely from the "performance" by the national of the acts or fulfillment of the conditions in this chapter." (emphais added) See also CFR Title 22, Chapt I, 50.51(c) "Reviewing a finding

of loss of nationality." "When the Department reverses a finding of "loss of nationality", the person concerned shall be considered not to have "lost U.S. nationality as of the time of the expatriating act was committed" and the Certificate of Loss of nationality shall be vacated." (emphasis added) INA Section 351(a) upon which the Secretary relies, states "Except as provided in paragraph (6) and (7) of Section 349(a) of this title, no national of the United States can "lose United States nationality" under this Act while within the United States or any of its possessions, but the "loss of nationality" shall result from the "performance" within the United States or any of its outlying possessions, of any of the acts or fulfillment of any of the conditions specified in **this chapter** if and when the national takes up residence outside of the United States and its outlying possessions." (emphasis added). The defendant has never disputed that plaintiff was personally present on foreign soil when he performed the expatriating act (349(a)(1) in 2004 and in fact thereafter took up residence. Plaintiff asserts that he has proven both the commission of the expatriating act was performed on foreign soil and met the burden of proving so by the preponderance of the evidence (349(b)) making him fully compliant with Section 351(a).

34. Courts have long held that "Congress sought by the enactment of Section 356 of the Immigration and Nationality Act of 1952, 8 U.S.C. 1488, to have [loss of nationality] occur immediately upon [commission] of the expatriating acts." Marks v. Esperdy 315 F .2d 673, 676 (2nd Cir. 1964) affirmed in 377 U.S. 214 (1964). (see also "Survey of the Law of Expatriation, John

Yoo (supra). (emphasis added). Plaintiff respectfully argues that "commission" is synonymous with "performance" as Congress articulated in Sections 349, 351, 356 of the INA. By no means can it mean "administrative determination". The plaintiff, like "Marks" committed his expatriating act while on foreign soil and both would find themselves incarcerated at the time their alienage determined. The Court found that "Marks" had "expatriated at the time the expatriating acts were committed, not at the time his alienage was judicially determined." (Marks supra)

35. The D.C. Circuit has spoken to the issue of when nationality is lost holding: "There are no exceptions listed in 1481 or 1488 (349 or 356 of the INA) requiring administrative or judicial determinations before citizenship is lost...it is consistent with Congress's determination that United States citizenship may be lost automatically, without any administrative or judicial determination when a person has voluntarily engaged in certain conduct with the requisite intent." United States v. Yakou 428 F .3d 241 D.C. Cir (2005) (citing Marks supra) see also Afroyim v. Rusk 387 U.S. 253 (1967).

36. The Board of Immigration Appeals (BIA) has clarified the applicability of INA Section 351 upon which the defendant relies. In the matter of Davis, BIA Precedent Decision # 2650 (1978) the BIA explained that "Congress evidently believed that certain acts [performed] in the United States, should not result in expatriation unless the person thereafter took up a residence outside of the United States. The way that Concress defined 'residence' (8 U.S.C. 1101(a)(33)) when read in relation to

Section 351(a), clearly shows that it did not want statelessness
to be a bar to expatriation."  Going on to cite Jolley v. INS
441 F .2d 1245 (5th Cir 1971) (emphasis added) who similarly had
his alienage determined while on U.S. soil, regardless of the
determination making him "stateless".

37.  In the matter of Duggan - BIA Decision #2026 (1970)
while the defendant was in custody on U.S. soil, his alienage
was determined by the government for an expatriating act he had
committed on foreign soil.  The BIA held " that expatriation did
take place under Section 349(3) of the Act.   And (h)aving so
determined, it is unnecessary to consider whether applicant also
expatriated....under 349(6) as one who made a formal renunciation
before a consular officer of the United States in a foreign state."
The Board went on to find him excludible and deportable upon his
release from prison and since Canada went on record that they would
accept him, he would be deported to Canada upon his release.
Switzerland has also gone on record to accept their citizen as
well.   Plaintiff asserts that the Secretary is required by the
INA to defer to the Attorney General and BIA precedent decisions
(Section 103(a)).

38.  The defendant has never disputed that the plaintiff
performed the expatriating act of obtaining naturalization and
has performed this act, while he was present on foreign soil.
The record is also clear that plaintiff will not be made "stateless"
by the loss of his U.S. nationality as he is a Swiss citizen.
Plaintiff asserts that defendant's reliance on Section 351 as
a basis to deny his CLN claim is not supported by the statute,

Court or BIA precedents.

39.  Plaintiff additionally contends that a reversal of this over 50 year precedent would lead to the absurd result that a U.S. national could commit each and every paragraph of Section 349(a)(1-5) and as long as he returned to U.S. soil, the government would not be able to prosecute him under the INA for performing the acts.  In no way can Congress's intent be so absurdly misconstrued in reading INA Sections 349(a), 351 and 356.

40.  Plaintiff's counsel sent an email to the Vice Consul, attempting again to explain the differences between Section 349(1) and (5) as well as the process as defined in CFR 50.40 versus 50.50, but this email went unresponded.

41.  On the 19th of September, 2016 plaintiff appealed to the Director of Consular Affairs, Legal Affairs Office which according to the information provided by the Vice Consul in Bern, was the responsible office for reviewing denials of CLN requests.  Plaintiff's counsel provided the Bureau of Consular Affairs a complete overview of the correspond- ence to date as well as the supporting evidence with anew a fomal request for issuance of the CLN based on plaintiff's expatriation under Section 349(a)(1).

42.  The Director of the Office of Legal Affairs responded on the 9th of November, 2016 and asserted that she "can not approve the CLN for Mr. Farrell based on 349(1) at this time." Firstly, she asserted that "as a threshold matter, the Department cannot approve a CLN based on INA 349(a)(1) while a U.S. national

is residing in the United States."   However, in the matter of
Richards v. Secretary of State 752 F .2d 1413 (9th Cir 1985),
the record shows that the Secretary both approved and served the
CLN to Richards while he was physically on U.S. soil in Califor-
nia, following their determination that he had committed an
expatriating act while on foreign soil by obtaining citizenship
in Canada.  Plaintiff asserts that defendant's denial on the
basis of Section 351 or agency precedence is improper and
lacks any coherence, futher making this decision arbitrary
and capricious.

43.  Plaintiff contends that defendant has drawn
erroneous conclusions from court holdings completely distinguish-
able from plaintiff's claim in three crucial ways:  Firstly,
in each of her cited cases where prisoners were seeking to
renounce their citizenship with the Department of Homeland Sec-
urtity, they were seeking renunciation under 349(6), not 349(1)
as is the case with the plaintiff.  Second, INA 349(6) expressly
requires two crucial elements that 349(1) does not, namely, the
renuciation must take place [before] such an officer as designated
by the Attorney General in a [form] as prescribed by him.  Neither
of these elements are present in 349(1), under which the plaintiff
has requested a CLN.  Thirdly, in each of her cited cases the
common theme is that the prisoner has not yet committed an
expatriating act and because of the requirements of personal
appearance and that the renunciation be in a form prescribed,
they are not able to perform the expatriating act.  Additionally,
as they are on U.S. soil, Section 351 of the INA prevents them

from "performing" any other expatriating act. (emphasis added)

44.   Defendant asserts in her letter that "INA Section
351(a) and Section 358 read together prescribe legal requirements
for the Department's approval of the CLN.  Implemented further
by regulation and established  Foreign Affair Manual procedures
that safeguard Constitutional protections of voluntariness and
intent."  Plaintiff asserts two points:  Congress set forth
unambiguously "the legal requirements" for expatriation under
349(a)(1-7) and expressly limited additional requirements under
356.  Secondly, Plaintiff asserts that the "safeguards" are
designed to prevent [unwanted] loss of nationality, not when
an individual is [seeking] it and has provided proof of his
commission of the expatriating act and his intent by the
statutorily required preponderance of the evidence (349(b)).  "If
a citizen makes that choice and carries it out, the choice must
be given effect."  "United States citizens have a right to become
aliens.  In Afroyim, the Court placed the right to voluntary
expatriation solidly on a Constitutional footing."  Richards v.
Secretary of State (supra) also cited by the Solicitor General
in his "Survey of the Law of Expatriation" (supra)

45.   Defendant additionally erroneously asserts that "Loss
is not automatic upon commission of the expatriating acts."
However, this is manifestly contrary to "Congress's determination
that United States citizenship may be lost automatically, without
any administrative or judicial determination, when a person has
voluntarily engaged in certain conduct with the requisite intent.
see U.S.C. 1481, 1488 (2000)" United States v. Yakou, D.C. Cir

21

2005 (supra), also citing <u>Marks v. Esperdy</u> (supra).

46. Plaintiff alleges that defendant's position concerning the legal requirements for the issuance of a CLN is also manifestly contrary to how Congress drafted and passed the INA. Notably, Section 349(a)(1-7), Section 351 and Section 356 were specifically drafted in [CHAPTER III] of the INA titled "<u>Loss of Nationality</u>". Section 358 however, was placed in [CHAPTER IV] titled "<u>Miscellaneous</u>". In Chapter III, Congress expressly defined each of the seven acts, each having unique requirements if "performed", would result in the loss of U.S. nationality (INA Section 349(a)(1-7) and once "performed", proving so must be by the preponderance of the evidence (349(b)). In Section 351 Congress reiterated that these acts must be "performed" on foreign soil. Most notably, and fatal to the defendant's argument, Section 356 expressly states that "The [loss of nationality] **shall result solely** from the [performance] by a national of the acts or fulfillment of the conditions specified in [this chapter]." (emphasis added) In fact, in the application notes of Section 356, Congress clearly defined "this chapter" to mean <u>Chapter 3 of the INA</u>. Plaintiff contends that Congress has unambiguously spoken that "Loss of Nationality shall result solely from the performance of the acts or fulfillment of the conditions in this chapter" Section 356 of the INA, which expressly limits those conditions to conditions within Chapter III. "If Congress has spoken on the matter, that is the end of the inquiry" <u>Kingdomware Techs. Inc. v. United States</u> <u>579 US 136 2016</u>. Plaintiff asserts that Congress was insistent

that nothing outside of Chapter III, to wit in Chapter IV
"Miscellaneous" should override their intent as plainly expressed
in Chapter III "Loss of Nationality". In Chapter IV, Section 358
prescribes the administrative procedures and directs the Secretary
to examine whether a person has committed an act while on foreign
soil - specifically "provisions of Chapter 3" and if he has
reason to believe such an act was committed, the consular officer
(as defined in Section 101(9) of the INA) "shall certify the facts
upon which such a belief is based to the Department of State, in
writing, under regulations prescribed by the Secretary of State."
The use of the word "shall" mandates that he must certify the
"facts".  He is then given the discretion to approve "the report"
which according to law of the INA must be based on whether he
has been provided proof of "performance" of the act on foreign
soil and that this act was "performed with the intent to
relinquish United States nationality", both by the statutorily
mandated preponderance of the evidence standard – 349(b).  He
is presumed to have committed this act voluntarily — 349(b).

47.  Courts have long held that Section 358 focuses on the
administrative process for obtaining and certifying the facts
of a potential loss of nationality based on the consular officer's
"report".  Notably, in 1994 Congress added one sentence to the
statute (358(b)). "The final sentence in the section refers
[only to the approval of the certificate] because its purpose is
to delineate when the statute of limitations begins to run for
the purposes of an appeal to the Board of Appellate Review under
22 C.F.R 7.5 or action under Section 360 of the Immigration and
Nationality Act." Lozada Colon v. U.S. Dep't of State 2 F. Supp

2d. 43, 45 (D.D.C. 1998).   Courts have consistently held that
"Loss of Nationality is in all cases to result from the
existence of facts"   Whitehead v. Secretary of State 794 F .2d
115 3rd Cir (1986). "Section 1501 (INA 358) is not a statute
specifying procedure for the administrative "determination" of
a claim of right or privilege as a national of the United States.
The functions required of the various entities are purely
ministerial."   Whitehead (supra).   "Therefore, the agency's
decision, and whether such a decision was arbitrary or capricious,
an abuse of discretion, or otehwise not in accordance with law,
is viewed through the lens of whether (plaintiff) established his
expatriating acts to the agency by a preponderance of the evidence."
Fox v. Clinton 751 F. Supp. 2d 122 D.D.C. (2010).

48.  On the 1st of December, 2016 plaintiff made a final
attempt to argue his legal position for the issuance of a CLN
on the basis of 349(a)(1) by addressing each of the defendant's
issues in her letter from November 9th, 2016.  Plaintiff argued
the issues thoroughly citing controlling case law by the Courts
and BIA precedents as well as the controlling statutes under-
pinning this case.  Plaintiff expressly asked defendant in the
event that she remain unpersuaded to issue the CLN to the
plaintiff, that she should indicate this as her final agency
action.

49. Defendant responded on the 13th of February, 2017 again
denying plaintiff's request for a CLN on the basis of 349(1),
which for the purposes of this complaint, plaintiff asserts is
the Secretary's final agency action, as it represents the
consummation of the Department's decision making process, from

24

which plaintiff has been denied the right to expatriation and
the issuance of a Certificate of Loss of Nationality under
Section 349(a)(1) of the INA.

### VII Exhaustion of Remedies

50.   The Legal Affairs Office of the Bureau of Consular
Affairs at the Department of State is the administrative body
which reconsiders denials for a Certificate of Loss of Nationality.
They have conducted a de novo review and concluded that they can
not issue plaintiff a CLN based on his 2004 commission of INA
Section 349(a)(1) while personally present in Switzerland.   There
is no other remedy available to the plaintiff.   The denial by the
Bureau of Consular Affairs constitutes final agency action in this
case and for the purposes of 5 U.S.C. 704.

### VIII Claims
### for relief

#### Count I

#### APA, 5 U.S.C. 701 et seq.

51. Plaintiff re-alleges and incorporates by reference
the allegations contained in paragraphs 1-50 of this Complaint,
as if fully set forth here.

52.   The Administrative Procedure Act provides that "[a]
person suffering legal wrong because of agency action, or
adversely affected or aggrieved by agency action within the
meaning of a relevant statute, is entitled to judicial review
thereof." 5 U.S.C. 702.

53.   The Administrative Procedure Act further empowers the Court to "hold unlawful and set aside agency actions, findings, and conclusions found to be ... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" 5 U.S.C. 706(2).

54.  The conduct and decisions of Defendants as described above constitutes unlawful action that has caused plaintiff to suffer legal wrong reviewable by this Court under APA, 5 U.S.C. 706.

## Count II

### Declaratory and Injunctive Relief,
### 28 U.S.C. 2201 & Fed. R. Civ. P. 65

55.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-50 of this Complaint, as if fully set forth here.

56.   The Declaratory Judgment Act, 28 U.S.C. 2201 grants this Court authority to declare the Plaintiff's legal rights when an actual controversy exists.

57.   Plaintiff and Defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in accordance with 28 U.S.C. 2201.

58.   For reasons stated above, plaintiff is entitled to a declaration of his rights.

59.  A failure to enjoin Defendant's unlawful, arbitrary and unreasonably delayed issuance of a CLN has and will continue to cause plaintiff to suffer injury in that it will deprive him from his right to expatriation and compel him to continue association with the United States against his wishes and fail to protect him from agency action that is arbitrary, capricious, in bad faith, or contrary to law.

60. No adequate remedy at law exists.

61. Plaintiff is entitled to injunctive relief enjoining Defendants from continuing their unlawful refusal to issue a CLN as alleged in this Complaint.

62.  Defenandants have no protectable interest in the continuation of their unlawful and arbitrary conduct.

## IX Prayer for Relief

Plaintiff Gerald Lee Farrell respectfully requests that this Court enter a judgment in his favor and:

A. Declare that the Defendants have violated Plaintiff's right to expatriation under 349(a)(1) of the Immigration and Nationality Act of 1952.

B. Declare that Defendants have acted arbitrarily, capricioiusly and unreasonably denied Plaintiff's request for a Certificate of Loss of United States Nationality, which is contrary to law.

C. Declare that Defendants have violated 349(b) and 5 U.S.C. 706(2) in excess of statue authority and limitation by requiring a higher burden of proof and requiring Plaintiff to prove

voluntariness before they will adjudicate Plaintiff's request for a CLN under 349(a)(1).

D. A Judicial Determination that Plaintiff's voluntary loss of Nationality under INA Section 349(a)(1) has been proven by the preponderance of the evidence and that Plaintiff assumed the status of an alien in 2004 at the time of the performance of the expatriating act. The Plaintiff is not a U.S. Citizen.

E. A Judicial order requiring Defendants to issue to Plaintiff a Certificate of Loss of U.S. Nationality under its authority granted in 5 U.S.C. 706(1).

F. Grant to Plaintiff such other relief that this Court deems just, equitable and proper.

F. Award Plaintiff costs pursuant to the Equal Access to Justice Act or other applicable law.

G. Maintain jurisdiction over this action until the Secretary of State, Department of State Bureau of Consular Affairs have complied with this Court's orders.

Dated: 3/3/17

Gerald Farrell - Plaintiff (pro se)

Gerald Lee Farrell
FCI Big Spring
1900 Simler Avenue
Big Spring, Texas
79720 USA
Reg# 16010-023